















BJR

3:00-CV-1971 GRIVAS V. CARLSBAD AUTO SVC

*1*

*CMP.*

ORIGINAL

1  JEFF PRICE (N°. 165534)
   204 BICKNELL AVENUE
2  SANTA MONICA, CALIFORNIA 90405
   310 314-0800
3

4  ATTORNEY FOR PLAINTIFFS

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  WILLIAM GRIVAS, JR. and MICHAEL
    EHLINE, individually, and d/b/a          **00 CV  1971 K  (NLS)**
11  AMERICAN LIMOUSINE SERVICE,
                                             Case No. CV_____
12            Plaintiffs,
                                             **COMPLAINT**
13            vs.
                                             1.  Deprivation of Civil
14  CARLSBAD AUTO SERVICE, INC., a               Rights, 42 U.S.C. § 1983
    California corporation, WAYNE J.         2.  Conspiracy to Deprive Civil
15  MILACK, SGT. JEFF CHAPMAN,                   Rights, 42 U.S.C. § 1983
    SENIOR OFFICER JIM MARTSELL,            3.  Deprivation of Civil
16  OFFICER GERRY ELLSWORTH, CITY               Rights, 42 U.S.C. § 1983
    OF CARLSBAD, and TEN UNKNOWN            4.  Conversion
17  NAMED DEFENDANTS, inclusive,            5.  Breach of Contract
                                             6.  Negligence
18            Defendants.                    7.  Assault and Battery

19                                           **DEMAND FOR JURY TRIAL**

20

21                       **JURISDICTION AND VENUE**

22       1.     This is an action for redress for deprivations of constitutional rights under 42

23  U.S.C. § 1983, and the jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and

24  1343.

25       2.     This action includes pendent common law claims and the jurisdiction of the court is

26  invoked pursuant to 28 U.S.C. § 1367 as the pendent common law claims asserted herein and the

27  claims over which the court has original jurisdiction arise from a common nucleus of facts and the

28  pendent common law claims are so related to the claims over which the court has original

FILED

00 OCT -2 PM 3: 41

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:  B. Reed  DEPUTY

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

### THE PARTIES

3.      Plaintiff Michael Ehline, who makes this complaint, was within this district and within the jurisdiction of the United States of America at all times herein alleged and thus venue in this district is proper according to 28 U.S.C. § 1391(b).

4.      Plaintiff William J. Grivas, Jr., who makes this complaint, was within this district and within the jurisdiction of the United States of America at all times herein alleged and thus venue in this district is proper according to 28 U.S.C. § 1391(b).

5.      At all material times plaintiffs Michael Ehline and William J. Grivas, Jr., were doing business as American Limousine Service, a partnership duly formed and organized under the laws of the State of California.

6.      Defendant Carlsbad Auto Service, Inc. [Carlsbad Auto Service], a California corporation, was at all times the employer of Wayne J. Milack.

7.      Defendant Wayne J. Milack was at all material times the Chief Executive Officer and a Director of defendant Carlsbad Auto Service, Inc.

8.      Defendant Sgt. Jeff Chapman was at all material times a California police officer employed by the City of Carlsbad with the Carlsbad Police Department.

9.      Defendant Senior Officer Jim Martsell was at all material times a California police officer employed by the City of Carlsbad with the Carlsbad Police Department.

10.     Defendant Officer Gerry Ellsworth was at all material times a California police officer employed by the City of Carlsbad with the Carlsbad Police Department.

11.     Defendant City of Carlsbad was at all times alleged herein a municipal corporation and a California governmental entity charged with and responsible for appointing and promoting the employees of the Carlsbad Police Department, and for the supervision, training, instruction, discipline, control and conduct of said employees. At all times alleged herein defendant County of Los Angeles had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules,

instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the municipality.

12.    Plaintiffs are ignorant of the true names and capacities of those defendants named as Unknown Named Defendants or "Does", but alleges that each such defendant was in some intentional or grossly negligent manner responsible for their injuries. Plaintiffs will amend this complaint to allege the true names and capacities of said defendants when they become known.

13.    Defendants, and each of them, did the acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

14.    Each and every defendant who is a natural person, except Wayne J. Milack, is sued in both his/her individual/personal capacity, as well as in his/her official capacity if he/she had any policymaking duties, functions, or responsibilities with respect to the matters alleged herein.

15.    At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

## FACTS COMMON TO ALL COUNTS

16.    Each and every allegation set forth in each and every averment of this complaint hereby is incorporated by this reference in each and every other averment and allegation of this complaint.

17.    The plaintiffs were deprived of interests protected by the Constitution and laws of the United States of America, and each and every defendant caused such deprivation while acting under color of law.

18.    All acts and/or omissions perpetrated by each defendant, were engaged in maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to constitutional rights, and with evil motive and/or intent, in disregard for the rights of the plaintiffs and others.

19.    Any governmental entity defendant, policymaker, and/or supervisory official knowingly, or grossly negligently, or with deliberate indifference to the constitutional rights

1   allegedly violated, caused to come into being, maintained, fostered, condoned, approved of,
2   acquiesced in, ratified, took no action to correct, an official policy, practice, or custom of
3   permitting the occurrence of the type of wrongs set forth in this complaint, and/or improperly,
4   inadequately, or with deliberate indifference to the constitutional rights of persons, grossly
5   negligently, or with reckless disregard for constitutional rights, failed properly to train, to
6   supervise, to retrain, to monitor, or to take corrective action with respect to the police and with
7   respect to the types of wrongful conduct alleged in this complaint against the police, including, but
8   not limited to, the failure to train, to supervise, to retrain, to monitor and to take corrective action
9   with respect to the failure to enforce the law of the State of California, the unconstitutional
10   enforcement of local ordinances and statutes, and the enforcement of unconstitutional ordinances
11   and statutes, so that each one of them is liable legally for all injuries and/or damage and damages
12   sustained by the plaintiff pursuant to the legal principles set forth in *Monell v. Department of*
13   *Social Services of the City of New York*, 436 U.S. 658 (1978), *Heller v. Bushey*, 759 F.2d 1371 (9th
14   Cir. 1986), *cert. granted and rev'd on other grounds sub nom. City of Los Angeles v. Heller*, 106
15   S.Ct. 1573 (1986), and *Larez v. Gates*, 946 F.2d 630 (9th Cir. 1991), the content of all of which is
16   incorporated herein by this reference. All policymaker/supervisorial defendants are sued on this
17   theory both in their individual/personal capacities as well as in their official capacities. The term
18   "policymaker/supervisorial defendants" as used herein includes persons and/or entities who are
19   not alleged to have been physically at the scene of the October 2, 1999, incident set forth in this
20   complaint. It is also alleged that prior failures to investigate and to discipline the police
21   misconduct in this case all make the policymaker/supervisorial defendants liable in this case.

22       Also, it is alleged that prior failures to investigate police misconduct and/or to discipline
23   police found culpable for misconduct, inadequate investigations and/or inadequate discipline
24   imposed for police misconduct, and/or a failure to investigate and/or to discipline the police
25   defendants in this case for the alleged misconduct in this case and in other instances, all make the
26   governmental entity defendant liable for the police misconduct in this case.

27       20.    On or about September 27, 1999, plaintiff William Grivas Jr. took a 1994 Lincoln
28   Towncar limousine owned by American Limousine Service to Carlsbad Auto Service, Inc.,

located at 3181 Tyler Street, Carlsbad, California, for the purpose of having the transmission repaired.

21.     Stu, who was employed as a mechanic by Carlsbad Auto Service, and who was at all times acting within the course and scope of his employment with Carlsbad Auto Service, telephoned Mr. Grivas later that day and told Mr. Grivas that Carlsbad Auto Service had checked the limousine and diagnosed that it was necessary to replace the limousine's transmission.

22.     When Mr. Grivas went to Carlsbad Auto Service to retrieve the limousine Stu informed Mr. Grivas that Carlsbad Auto Service offered to fix the limousine, including replacing the transmission, and to complete the job by Friday morning, October 1, 1999, for $2,200; Stu also communicated an offer to fix the limousine by Monday, October 4, 1999, for $1,700.

23.     Mr. Grivas accepted the offer to pay Carlsbad Auto Service $2,200 to repair the limousine, on the condition that Carlsbad Auto Service complete the repairs and have the limousine ready to operate by 8:00 a.m., Friday, October 2, 1999; Carlsbad Auto Service promised to complete the repairs and have the limousine ready to operate by 8:00 a.m., Friday, October 2, 1999.

24.     Carlsbad Auto Service produced a written "estimate", dated September 28, 1999, which memorialized, in part, the agreement between Carlsbad Auto Service and plaintiffs, and which provides for reasonable attorney fees to be paid in the event of an action for breach of contract, a copy of which is attached hereto, marked Exhibit "A".

25.     On or about September 30, 1999, Stu told Mr. Grivas that the transmission Carlsbad Auto Service ordered did not fit the limousine and that Carlsbad Auto Service would not complete the repairs on the limousine and have it operable until the afternoon of October 1, 1999.

26.     When Mr. Ehline went to take delivery of the limousine on October 1, 1999, the repairs had not been completed and the limousine was inoperable.

27.     On Saturday, October 2, 1999, at approximately 5:00 p.m. Mr. Ehline went to Carlsbad Auto Service to pay for the repairs and to take delivery of the limousine; Mr. Ehline presented a check to defendant Milack in the full amount of the total amount due for the services performed as stated on the invoice.

1       28.     Defendant Milack refused to accept the check.

2       29.     Defendant Milack threatened to report the limousine stolen to the police and have

3 plaintiff Ehline arrested for grand theft if plaintiff did not turn the keys to the limousine over to

4 defendant Milack.

5       30.     Mr. Ehline had previously asked Stu to call the police after Mr. Ehline presented

6 the check to him and Stu informed Mr. Ehline that he could not accept the check and would not

7 release the limousine to Mr. Ehline.

8       31.     Defendant Ellsworth arrived at Carlsbad Auto Service and after Mr. Ehline

9 explained that Carlsbad Auto Service refused to accept the check and refused to relinquish the

10 limousine, stated that the dispute between Mr. Ehline and Carlsbad Auto Service was a civil

11 matter.

12       32.     Shortly thereafter, defendant Marstell arrived and announced that the dispute was a

13 "civil matter"; defendant Marstell then demanded Mr. Ehline's name and checked a computer

14 system for warrants.

15       33.     Defendant Marstell then ordered Mr. Ehline to produce a drivers license and

16 informed Mr. Ehline that if he did not produce a drivers license the limousine would be

17 impounded and he would be arrested.

18       34.     Defendant Marstell then ordered Mr. Ehline to turn the keys to the limousine over

19 to defendant Carlsbad Auto Service and or Stu.

20       35.     Mr. Ehline produced a valid California Drivers License.

21       36.     Sgt. Chapman arrived on the scene and he and defendant Marstell and defendant

22 Milack huddled together and conversed out of earshot.

23       37.     Subsequently, defendant Chapman and defendant Milack approached Mr. Ehline

24 and defendant Milack ordered plaintiff Ehline to leave the Carlsbad Auto Service property

25 immediately before stating to plaintiff and defendant Chapman that his (Milack's) contract stated

26 that the limousine was his property until the repair bill was paid and that he could have the Mr.

27 Ehline arrested for grand theft if he drove the limousine away and the three defendant Carlsbad

28

1  police officers told Mr. Ehline that if Mr. Ehline drove the limousine away, they would pull him

2  over, impound the vehicle and arrest him for grand theft.

3     38. Defendant Chapman also stated that he read the "contract" and that if Mr. Ehline

4  took the limousine he could arrest Mr. Ehline for grand theft.

5     39. After plaintiff informed defendant Chapman and defendant Milack that he had paid

6  defendant Milack for the repair work by presenting him with a valid check, defendant Milack

7  approached plaintiff in a rude, angry and threatening manner, in the presence of defendants

8  Chapman, Marstell and Ellsworth, with the check in his hand and made a stuffing motion towards

9  plaintiff's shirt pocket and touched plaintiff's person in a harmful and offensive manner, causing

10 plaintiff to jump back away from defendant Milack.

11    40. Defendant Chapman then ordered Mr. Ehline to give the keys to the limousine to

12 defendant Milack, stating that plaintiff would be arrested if he did not do so.

13    41. Plaintiff Ehline relented and gave the keys to the limousine to defendant Milack.

14    42. Defendant Chapman then ordered Mr. Ehline to leave the Carlsbad Auto Service

15 property, and plaintiff did so.

16    43. Defendant Wayne J. Milack, acting, at least in part as the Chief Executive Officer

17 of defendant Carlsbad Auto Service, ordered, acquiesced in, conspired to, and or personally

18 caused the sabotage of plaintiffs' limousine by deliberately causing the destruction of the

19 electrical wiring connecting the computer control and the mechanism that controlled the rear air

20 suspension, resulting in a repair bill in the amount of $1,500 for the rewiring of the rear air

21 suspension system.

22    44. As a result of the breach of the oral contract by Carlsbad Auto Service and Wayne

23 J. Milack, plaintiffs lost at least $1,200 in revenue.

24    45. Any governmental entity defendant, policymaker, and/or supervisory official

25 knowingly, or grossly negligently, or with deliberate indifference to the constitutional rights

26 allegedly violated, caused to come into being, maintained, fostered, condoned, approved of,

27 acquiesced in, ratified, took no action to correct, an official policy, practice, or custom of

28 permitting the occurrence of the type of wrongs set forth in this complaint, and/or improperly,

1   inadequately, or with deliberate indifference to the constitutional rights of persons, grossly

2   negligently, or with reckless disregard for constitutional rights, failed properly to train, to

3   supervise, to retrain, to monitor, or to take corrective action with respect to the police and with

4   respect to the types of wrongful conduct alleged in this complaint against the police, including, but

5   not limited to, the failure to train, to supervise, to retrain, to monitor and to take corrective action

6   with respect to the failure to enforce the law of the State of California, the unconstitutional

7   enforcement of local ordinances and statutes, and the enforcement of unconstitutional ordinances

8   and statutes, so that each one of them is liable legally for all injuries and/or damage and damages

9   sustained by the plaintiffs pursuant to the legal principles set forth in *Monell v. Department of*

10  *Social Services of the City of New York,* 436 U.S. 658 (1978), *Heller v. Bushey,* 759 F.2d 1371 (9th

11  Cir. 1986), *cert. granted and rev'd on other grounds sub nom. City of Los Angeles v. Heller,* 106

12  S.Ct. 1573 (1986), and *Larez v. Gates,* 946 F.2d 630 (9th Cir. 1991), the content of all of which is

13  incorporated herein by this reference. All policymaker/supervisorial defendants are sued on this

14  theory both in their individual/personal capacities as well as in their official capacities. The term

15  "policymaker/supervisorial defendants" as used herein includes persons and/or entities who are

16  not alleged to have been physically at the scene of the January 31, 1999, incident set forth in this

17  complaint. It is also alleged that prior failures to investigate and to discipline the police

18  misconduct in this case all make the policymaker/supervisorial defendants liable in this case.

19          46.     Defendant Wayne Milack commanded, directed, advised, encouraged, procured,

20  instigated, promoted, controlled, aided and/or abetted the illegal seizure of plaintiffs' property by

21  falsely and maliciously reporting to defendants Chapman, Marstell and Ellsworth that his contract

22  stated that plaintiffs' limousine was his property until the repair bill had been paid and that he

23  could have the police, i.e., defendants Chapman, Marstell and Ellsworth arrest plaintiff Michael

24  Ehline, and by forming an agreement or understanding with said other defendants and persons that

25  plaintiffs' property would be seized, and defendant Milack's acts led to the seizure of Mr. Ehline

26  and the seizure of plaintiffs' limousine.

27

28

47.     Defendant Wayne Milack was at all material times alleged herein acting so closely with defendants Chapman, Marstell and Ellsworth, who were acting under color of state law, that he was a state actor acting under color of state law.

48.     As a proximate result of the aforementioned acts and/or omissions of defendants, and each of them, plaintiffs have suffered and continue to suffer from personal injuries, including but not limited to physical and emotional pain, mental and emotional distress, degradation, fear, humiliation, anguish, anxiety, and embarrassment, all proximately resulting in some permanent impairment, disability and damage and they claim general damages for such physical and mental pain in an amount to be shown according to proof.

49.     As a proximate result of the aforesaid acts and omissions of defendants, and each of them, plaintiffs have lost and will continue to lose income in an amount to be proven at time of trial.

50.     The actions and omissions of the defendants were willful, intentional and done maliciously and oppressively and with disregard for the rights of others.

## COUNT ONE

### DEPRIVATION OF CONSTITUTIONAL RIGHTS - FOURTH AMENDMENT - 42 U.S.C. § 1983

### Against all Defendants

51.     At the time of the incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under Amendment XIV to the United States Constitution to due process of law and under Amendment IV to be free from unreasonable search and seizure, were in force and effect and the defendants, who engaged in conduct (including actionable omissions, if applicable), as set forth above, who deprived plaintiffs of their constitutional rights, which violated those rights, violated the fourteenth amendment to the United States Constitution, and by virtue thereof, each such defendant is liable to each such plaintiff for damages, either nominal or compensatory, according to proof.

52.     The aforementioned acts of the defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual defendants. Said acts of the individual defendants and each of them were done

1  knowingly, wilfully, and maliciously, and with the intent to vex, annoy, harass and oppress

2  plaintiffs because of their assertion of their constitutional rights and to cause their injury and loss

3  of their rights. By reason thereof, plaintiffs request that said defendants each be required to pay

4  damages in an amount sufficient to deter others from these acts.

### COUNT TWO

### DEPRIVATION OF CONSTITUTIONAL RIGHTS - CONSPIRACY - 42 U.S.C. § 1983

### Against all Individual Defendants

8      53.     At the time of the incident set forth in the averments above, the rights of persons

9  within the jurisdiction of the United States of America under Amendment XIV to the United

10  States Constitution to due process of law and under Amendment IV to be free from unreasonable

11  search and seizure, and the defendants, who engaged in conduct (including actionable omissions,

12  if applicable), as set forth above, who deprived plaintiffs of their constitutional rights, which

13  violated those rights, violated the fourteenth amendment to the United States Constitution, and by

14  virtue thereof, each such defendant is liable to each such plaintiff for damages, either nominal or

15  compensatory, according to proof.

16      54.     In furtherance of the conspiracies to deprive plaintiffs of their constitutional rights,

17  defendants Milack, Chapman, Marstell, and Ellsworth met with each other, combined, conversed

18  and planned amongst themselves and, possibly, with other persons and unknown named

19  defendants, and there was an agreement or understanding between or among such persons to

20  engage in the conduct alleged herein to be wrongful, and that there was the commission of an

21  overt act in furtherance of said conspiracy.

22      55.     The aforementioned acts of the defendants, and each of them, support the award of

23  exemplary and punitive damages in an amount sufficient to punish and make an example of the

24  individual defendants. Said acts of the individual defendants and each of them were done

25  knowingly, wilfully, and maliciously, and with the intent to vex, annoy, harass and oppress

26  plaintiffs because of their assertion of their constitutional rights and to cause their injury and loss

27  of their rights. By reason thereof, plaintiffs request that said defendants each be required to pay

28  damages in an amount sufficient to deter others from these acts.

## COUNT THREE

### DEPRIVATION OF CONSTITUTIONAL RIGHTS - FOURTEENTH AMENDMENT - 42 U.S.C. § 1983

### Against all Defendants

56.     At the time of the incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under Amendment XIV to the United States Constitution to due process of law and substantive due process of law were in force and effect and the individual defendants, who engaged in conduct (including actionable omissions, if applicable), as set forth above, who deprived plaintiffs of their constitutional rights, which violated those rights, violated the fourteenth amendment to the United States Constitution, and by virtue thereof, each such defendant is liable to each such plaintiff for damages, either nominal or compensatory, according to proof.

57.     The aforementioned acts of the defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual defendants. Said acts of the individual defendants and each of them were done knowingly, wilfully, and maliciously, and with the intent to vex, annoy, harass and oppress plaintiff because of their assertion of their constitutional rights and to cause their injury and loss of their rights. By reason thereof, plaintiff request that said defendants each be required to pay damages in an amount sufficient to deter others from these acts.

## COUNT FOUR

### CONVERSION

### Against Defendants Carlsbad Auto Service, Inc., Wayne J. Milack and Unknown Named Defendants

58.     Plaintiffs Michael Ehline and William Grivas Jr. were at all material times the lawful owners and or had the right to possession of the 1994 Lincoln Towncar limousine that defendants Carlsbad Auto Service, Inc. and Milack agreed to repair on or about September 27, 1999.

59.     Defendants Carlsbad Auto Service and Wayne J. Milack interfered with plaintiffs' property interest by conspiring with the defendant police officers to use the power of the police,

acting under color of state law to intimidate plaintiffs, lying to the defendant police officers about the terms of the agreement with plaintiffs, and by refusing to release plaintiffs's property to plaintiffs and expelling plaintiff Ehline from the property of Carlsbad Auto Service, causing plaintiffs to lose the use of their property for at least 48 hours and lost revenue of at least $1,200.

60.     The aforementioned acts of the defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual defendants within the meaning of Civil Code § 3294. Said acts of the defendants and each of them were done knowingly, wilfully, and maliciously, and with the intent to vex, annoy, harass and oppress plaintiffs, and the defendants's conduct, described herein, was intentional, malicious, unprivileged, despicable, outrageous, and so vile, base, and contemptible that it is looked down upon and despised by ordinary decent people, and this conduct was directed at plaintiffs by defendant with the intent that it would harm plaintiffs.

## COUNT FIVE

### BREACH OF CONTRACT

#### Against Defendants Carlsbad Auto Service, Inc. and Wayne J. Milack and Unknown Named Defendants

61.     Plaintiffs Michael Ehline and William Grivas, d/b/a American Limousine Service and defendants Carlsbad Auto Service, Inc. and Wayne J. Milack entered into an oral agreement for services whereby defendants would repair a limousine, and specifically, replace the transmission, and complete the job and deliver the vehicle in an operable condition to plaintiffs by 8:00 a.m., Friday, October 1, 1999.

62.     Pursuant to the terms of the agreement plaintiffs promised to pay defendants the sum of $2,200.

63.     Defendants failed to complete the repairs until 5:00 p.m., Saturday, October 2, 1999, and failed and refused to deliver the limousine to plaintiffs until Monday, October 4, 1999.

64.     Plaintiffs performed all of their obligations pursuant to the terms of the agreement, except those, if any, that plaintiffs were prevented and or excused from performing.

65.     Defendants Carlsbad Auto Service, Inc. and Wayne J. Milack breached the agreements by failing to complete the job by the time promised.

66.     As a direct and foreseeable result of defendants's breach of the agreement, plaintiffs suffered lost profits, incidental damages, consequential damages, and general damages in amounts to be proven at trial, and damages in form of attorney's fees.

## COUNT SIX

### NEGLIGENCE

### Against Defendants Carlsbad Auto Service, Inc. and Wayne J. Milack and Unknown Named Defendants

67.     In perpetrating the acts and conduct described herein, the defendants failed to use ordinary or reasonable care in the circumstances.

68.     In perpetrating the acts and conduct described herein, the defendants caused injury, loss and or harm to plaintiffs.

69.     As a proximate result of the acts and conduct of defendants, plaintiffs suffered arrest and imprisonment, pain, anguish, fear, humiliation, despair, fright, mental distress, sleeplessness, depression, distrust, embarrassment and degradation.

## COUNT SEVEN

### ASSAULT AND BATTERY

### Against Carlsbad Auto Service, Inc. and Wayne J. Milack and Unknown Named Defendants

70.     In doing the acts as alleged above, defendants intended to cause or to place plaintiff Michael Ehline in apprehension of a harmful or offensive contact with plaintiff's person.

71.     As a result of defendants's acts as alleged above, plaintiff, in fact, was placed in great apprehension of a harmful or offensive contact with plaintiff's person.

72.     Defendants subjected plaintiff to harmful or offensive contact.

73.     Plaintiff did not consent to any of the acts perpetrated by defendants alleged herein.

74.     The conduct of the defendants described herein caused injury, damage, loss or harm to plaintiff.

75. The aforementioned acts of the defendants, and each of them, support the award of exemplary and punitive damages in an amount sufficient to punish and make an example of the individual defendants within the meaning of California Civil Code § 3294. Said acts of the individual defendants and each of them were done knowingly, wilfully, and maliciously, and with the intent to vex, annoy, harass and oppress plaintiff because of his assertion of his constitutional rights and to cause his injury and loss of his rights. By reason thereof, plaintiff request that said defendants, except the municipality, each be required to pay damages in an amount sufficient to deter others from these acts.

## PRAYER

WHEREFORE, plaintiffs pray for judgment against these defendants, and each of them, as follows:

1. For all actual, consequential and incidental losses, including but not limited to loss of income and benefits, according to proof, together with prejudgment interest;

2. For general damages according to proof;

3. On claims One, Two, Three and Four, and Seven, for punitive damages against the individual defendants in an amount sufficient to make an example of them and to deter others;

4. For special damages for legal, medical and related expense, according to proof;

5. On claims One, Two and Three, for reasonable attorney fees pursuant to 42 U.S.C. § 1988;

6. On claim Five, for reasonable attorney fees pursuant to contract.

7. For plaintiffs's costs of suit herein;

8. For such other and further relief as this Court deems meet and just.

Dated: October 2, 2000

_Jeff Price_

Jeff Price
Attorney for Plaintiffs Michael Ehline and William Grivas

## DEMAND FOR JURY

The plaintiffs demand trial by jury of all issues.

_Jeff Price_

Jeff Price
Attorney for Plaintiffs

14

COMPLAINT



CARLSBAD AUTO SERVICE, INC.

3181 TYLER ST • CARLSBAD, CA 92008

PHONE: 760-729-1155

B.A.R. REG.# AD117423 • E.P.A.# CAL-001159939

**PRIME CONCERN**

341171

SENT BY : PRICE ;    OCT-2-00  2:08PM;    910 314 2162;    PAGE 1/2

A buyer of this product in California has the right to have this product serviced or repaired during the warranty period. The warranty period will be extended for the number of whole days that the product has been out of buyer's hands for warranty repairs. If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed. The warranty period will also be extended if the warranty repairs have not been performed due to delays caused by circumstances beyond the control of the buyer, or if the warranty repairs did not remedy the defect and the buyer notifies the manufacturer or seller of the failure of the repairs within 60 days after they were completed. If, after a reasonable number of attempts, the defect has not been fixed, the buyer may return this product for a replacement or a refund subject, in either case, to deduction of a reasonable charge for usage. This time extension does not affect the protections or remedies the buyer has under other laws.

1. Customer is hereby notified that the said property is not insured or protected to the amount of the actual cash value thereof, or otherwise, against loss as occasioned by theft, fire or vandalism while the property remains with the repair facility.

2. Customer states no articles of personal property have been left in the vehicle and repair facility is not responsible for inspection thereof.

3. The repair facility is not responsible for unavailability of parts or delays in parts shipment beyond repair facility control.

4. Due to the type of service requested some repairs must be sublet.

5. All charges for repairs including labor and materials furnished are due and payable simultaneously with the delivery of the within described vehicle or prior to delivery upon the expiration of three (3) days after notice that the repairs have been completed. Notice shall be deemed to have been given upon the deposit in the United States mail, postage prepaid, or written notification to that effect addressed to the customer at the address given on the reverse side hereof.

6. If the vehicle described herein is not called for within three (3) days after such notice is given, a storage charge of $20.00 per day will be made for each day thereafter.

7. Said repair facility is authorized to deliver the vehicle described therein or any of its contents to any person presenting this receipt.

8. In addition to any and all other legal remedies available, I understand the Said repair facility will retain the right to have a lien on the vehicle described herein for all charges for repairs, including labor and parts, storage and/or towing, and to enforce such lien, this repair facility may sell said vehicle at public auction after notification to the Department of Motor Vehicles of intent to do so. On the sale date, the vehicle shall be sold to the highest cash bidder and the proceeds of sale must be used firstly to satisfy the lien plus storage costs and costs incident to the sale, and the balance shall be forwarded to the Department of Motor Vehicles, if applicable. Said expenses for sale shall also include a reasonable attorney's fee, which may be necessarily incurred.

9. Bad Check Law - Pursuant to Section 1719 of the Civil Code. Any person who writes a check which is dishonored for lack of funds is civilly liable and can be sued in small claims court or any appropriate court for three times the amount of the check, plus the face value of the check.

10. If any such charges remain unpaid for thirty (30) days after such request for payment. Said repair facility may also refer such charges to its attorneys for collection and the customer will pay a reasonable attorney's fee.

## TO OUR SERVICE CUSTOMERS: PARTS AND LABOR MAY BE LISTED ON A SEPARATE INVOICE

Our charges for labor are not based on the actual mechanic's time, but by the work that is requested. This amount is established by historical industry time allowances or our own judgement of the time it takes to complete the job.

"You will be charged no more than the estimated price approved by you. However, if we discover that different or additional repairs are indicated, you will be contacted for your advance approval of a revised estimate."

## LIMITED WARRANTY ON PARTS AND ACCESSORIES

THE MANUFACTURER'S WARRANTY (INCLUDING PRORATED WARRANTIES FOR TIRES, BATTERIES, ETC.) CONSTITUTES ALL OF THE WARRANTIES WITH RESPECT TO THE SALE OF THESE PARTS & ACCESSORIES. THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND THE SELLER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THIS PRODUCT. THE BUYER SHALL NOT BE ENTITLED TO RECOVER FROM THE SELLER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFIT OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

## CALIFORNIA SMOG CHECK INFORMATION

Effective January 1, 1998: (1) Vehicles within three years of the current calendar year (example: 1995-1998 model vehicles in 1998 are exempt from the requirement to pass a Smog Check test to obtain a valid DMV registration. The exception is when there is a change of ownership. (2) Vehicles that are 25 years & older (example: 1973 model vehicles and older in 1998) are exempt from the Smog Check program and do NOT require testing at the change of ownership. (3) Vehicles identified as Gross Polluters are no longer subject to unlimited repair cost. They may qualify for a one-time two-year waiver by paying $450 to test and repair their vehicle. (4) Low income owners may qualify for an economic hardship extension that will allow them to register their vehicle provided they pay up to $250 to test and repair their vehicle.

If a "Gold Shield Guaranteed Repair Station" certified by the California Bureau of Automotive Repair makes the necessary emission-related repairs to your "Gross Polluter" vehicle, the repairs are guaranteed by this facility. If your Gross Polluter vehicle then fails its Smog Check retest, further emissions-related repairs at this station will be made at NO charge. Repairs must begin within 10 days or 1,000 miles (whichever occurs first) of the retest.

REPAIR WAIVERS OR ECONOMIC HARDSHIP EXTENSIONS MAY NOT BE ISSUED for: (1) Change of Ownership, (2) Initial California registration, or (3) Tampered (missing, modified, or disconnected) emissions control equipment. Tampered vehicles can only be certified at Test Only/Referee Centers and may become subject to annual smog inspections for 2-5 years. Two consecutive Repair Waivers or Economic Extensions will not be issued after January 1995.

A. Customer may be sent to a Referee Station by the Bureau of Automotive Repair if:
1. Motorist's vehicle failed the initial inspection when he/she thinks it shouldn't have.
2. Motorist has a dispute with repair facility (e.g. cost/quality of repair work is in dispute).

B. Customer may go directly to a Referee Station if it is to verify non-availability of emissions control components (Parts Locater 1-800-826-3580).
Bureau of Automotive Repair toll-free at (800) 952-5210.
FOR REFEREE APPOINTMENT CALL (800) 622-7733.

("HAZARDOUS MATERIAL) A hazardous waste disposal charge may be added when items removed from your vehicle or items used in conjunction with the repair of your vehicle must be disposed of in compliance with federal, state and local government hazardous waste regulations. These items could include any of the following: oils, greases, antifreeze/coolant, refrigerant, cleaning fluids, paint, solvents, thinners, brake pads, non-recyclable items, etc.

## WARNING THIS AREA CONTAINS CHEMICALS KNOWN TO THE STATE OF CALIFORNIA TO CAUSE CANCER, BIRTH DEFECTS OR OTHER REPRODUCTIVE HARM.

PROPOSITION 65, CALIFORNIA HEALTH AND SAFETY CODE SECTION 25249.5 et seq.) 8/98

(Rev. 07/89)

# CIVIL COVER SHEET

Case 3:00-cv-01971-K-NLS   Document 1   Filed 10/02/00   PageID.18   Page 18 of 18

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS** William Grivas, Jr. and Michael Ehline and d/b/a American Limousine Service

**DEFENDANTS** Carlsbad Auto Service, Inc., Officer Gerry Elliser, Wayne J. Milack, City of Carlsbad, and Sgt. Jeff Chapman, Senior Officer Tino Martel 10 Unknown Named Defendants

FILED '00 PM 3:41

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** San Diego
(IN U.S. PLAINTIFF CASES ONLY)

CLERK, U.S. DISTRICT COURT
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Jeff Price (No. 165534)
204 Bicknell Avenue
Santa Monica, CA 90405
(310) 314-0800

**ATTORNEYS (IF KNOWN)**

BY:

DEPUTY

'00 CV 1971 K (NLS)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only) **FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

42 U.S.C. § 1983 cv Deprivation of Civil Rights - Also, Breach of Contract, Conversion, Negligence, Assault and Battery

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyright | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 550 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

- ☒ 1 Original Proceeding
- ☐ 2 Removal from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   **DEMAND $** Damages according to proof   Check YES only if demanded in complaint: **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE   Docket Number

**DATE** 10/2/2000

**SIGNATURE OF ATTORNEY OF RECORD** J. Price

#06 4574 $150.20